UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VINCENT TURNER**,            Case No. 1:12 CV 765

    Plaintiff,                   Magistrate Judge James R. Knepp II

v.                            MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

### INTRODUCTION

Plaintiff Vincent Ross filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Supplemental Security Income (SSI). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

On January 14, 2008, Plaintiff filed an application for SSI claiming he was disabled due to cellulitis, hypertension, asthma, left leg varicosities, osteoarthritis of the knees, depressive disorder, and polysubstance abuse, in reported remission. (Tr. 18). He alleged a disability onset date beginning June 1, 2007. (*See* Tr. 18, 201-03, 220). His claim was denied initially (Tr. 87-89) and on reconsideration (Tr. 92-94). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 12). Plaintiff (represented by counsel), and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 13-25).

The ALJ found Plaintiff had severe impairments, but none of them, alone or in combination,

met or equaled a listing impairment. (Tr. 16-20). The ALJ also found Plaintiff's past work as an auto detailer, dishwasher, hotel lobby worker, and cook were not "past relevant work", as he never worked at the substantial gainful activity level[1]. (Tr. 17-18, 23, 279). The ALJ found Plaintiff could perform light work as defined in 20 C.F.R. § 416.927(b) with a sit-stand option, only occasional postural activities, no pulmonary irritants, and some mental restrictions. (Tr. 20-23). Based on VE testimony, the ALJ concluded Plaintiff could perform a significant number of jobs that existed in the national economy. (Tr. 24).

The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On March 29, 2012, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

Plaintiff challenges only the ALJ's conclusions regarding his physical residual functional capacity (RFC) (*see* Doc. 15), and therefore waives any claims about the determinations of his mental impairments. *See, e.g., Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's physical RFC.

Vocational and Daily Activity Evidence

Born January 19, 1962, Plaintiff was 45 years old when he applied for SSI. (Tr. 23, 36). Plaintiff completed eleventh grade and worked as a cook, home health aide, utility worker, line worker, lobby worker, dishwasher, and auto detailer. (Tr. 37, 228, 279). He testified he did not have

---

1. Past relevant work is limited to work within the past fifteen years that was performed long enough to learn how to do it and that reached the level of substantial gainful activity. § 416.960(b)(1).

2

a significant work history because he had been "incarcerated a lot." (Tr. 42). He was incarcerated on six occasions, between 1989 and 2001, all for drug-related convictions, which also included felonious assault and armed robbery convictions. (Tr. 42, 545). Plaintiff testified he had not used drugs since 2008. (Tr. 38). Throughout his alleged disability period, Plaintiff lived with his step-mother, girlfriend, or step-brother. (Tr. 37, 255, 456).

Concerning daily activity, Plaintiff said he could bathe and shop at the grocery store, but his girlfriend or step-brother had to help him do laundry and iron clothes. (Tr. 39, 257-58). Plaintiff went out twice a day and either took public transportation or walked. (Tr. 37, 257-58). He also said he volunteered, babysat his two grandchildren, and went to church every other week. (Tr. 40, 256). Although Plaintiff said he went out two times a day, he later said did not socialize and mainly stayed in his room and read. (Tr. 41, 258-59). He reported he was able to manage his finances but could not remember to take his medication. (Tr. 257, 259).

While Plaintiff alleged multiple impairments, he was mainly focused on physical problems associated with his left leg, which he said prevented him from standing for long periods. (Tr. 240, 248, 250, 252, 256, 258, 261, 268). When he initially applied for SSI, he indicated that only a blood clot in his left thigh prevented him from working. (Tr. 224). However, when asked if he used anything to help him ambulate, including crutches, a cane, a walker, or a wheelchair, Plaintiff said those items "[did] not apply, but [he] probably needed one". (Tr. 261). Plaintiff testified his leg trouble began when he had a staph infection in 2006, which had since caused flare-ups at least once a week. (Tr. 43).

The VE testified at Plaintiff's administrative hearing and found Plaintiff's prior work had not been performed at a level considered substantial gainful activity. (Tr. 53-54). The ALJ posed a

3

hypothetical person similar to Plaintiff's age, education, and work experience, with the following limitations: lifting no more than twenty pounds occasionally and ten pounds frequently; standing, walking, or sitting for six hours with a sit-stand option every hour for five minutes; occasional climbing of stairs or ramps; occasional bending or balancing; no kneeling or crawling; reaching in all directions and handling, fingering, and feeling; no pulmonary irritants; simple routine tasks with simple short instructions; simple, work-related decisions with few workplace changes; no production-rate pace work; and minimal contact with the public and superficial contact with coworkers or supervisors. (Tr. 56). The VE found this hypothetical person could work as a photocopy machine operator, mail clerk, or office helper according to the *Dictionary of Occupational Titles* (*DOT*). (Tr. 57).

Medical Evidence

On November 5, 2007, Plaintiff went to MetroHealth Medical Center complaining of bilateral hand pain and swelling, and pain in his left thigh and upper scrotum. (Tr. 342, 349). Testing revealed Plaintiff had a staph infection and a PICC line was placed to treat it with antibiotics. (Tr. 346-47, 349). Plaintiff was diagnosed with abscesses, cellulitis of the left hand, and a staph infection. (Tr. 307, 309-10). Two of the abscesses drained spontaneously, and the remainder were drained by incision. (Tr. 342-43). Plaintiff underwent x-rays of both hands, a CT scan of his chest, and an echocardiogram – all of which were normal. (Tr. 331-33, 335-36). Plaintiff was discharged to a skilled nursing facility to receive one month of antibiotic treatment. (Tr. 349, 353). However, Plaintiff left after two weeks against medical advice. (Tr. 353).

Plaintiff was referred to physical therapy in mid-November 2007. (Tr. 312). Session notes showed Plaintiff's balance and endurance were good and his posture was within normal limits. (Tr.

312). The physical therapist found he was not a candidate for therapy because he had functional mobility and was independent in activities of daily living. (Tr. 312, 314). Plaintiff was also referred to occupational therapy but the therapist found he did not require treatment. (Tr. 314-15). He had good activity tolerance, no deficits in balance, coordination, or sensation, and normal muscle tone. (Tr. 314). He was independent in mobility (meaning he did not require a walker, cane, or wheelchair), self-feeding, bathing, and dressing. (Tr. 317).

In January 2008, Plaintiff went to Warren West Community Hospital Center twice with complaints of knee and hip pain. (Tr. 362-64). Plaintiff indicated he was in pain from a previous gun shot wound to his hip and said the bullet was lodged there, but a hip x-ray came back normal. (Tr. 363-64, 368). He was diagnosed with varicose veins, and knee x-rays showed osteoarthritis. (Tr. 362-64, 368-69, 504).

In March 2008, Plaintiff presented to the Trumbull Memorial Hospital (Trumbull) emergency room complaining of depression. (Tr. 378). On examination, Plaintiff had a normal gait and no tenderness in his back, legs, or arms. (Tr. 382). It was noted the staph infection in his left leg had healed. (Tr. 378). Plaintiff tested positive for cocaine, and he admitted to alcohol, marijuana, and cocaine use. (Tr. 420).

On March 31, 2008, state agency physician Marcia Congbalay, M.D., reviewed Plaintiff's medical records and evaluated his physical condition. (Tr. 425-33). She found he was capable of medium work with few restrictions, and noted he had recovered from his staph infection. (Tr. 427-431).

Plaintiff returned to Trumbull on April 21, 2008 because he had been stabbed with a glass bottle across his right wrist and also had an abrasion on his abdomen. (Tr. 393-94, 360, 402). He

received stitches, which were removed May 5, 2008. (Tr. 360). Ten days later, Plaintiff returned complaining of a skin rash on his left leg. (Tr. 360-61). He was diagnosed with eczema and given a topical ointment. (Tr. 358-59).

Margaret A. Bancroft, Ph.D., a consultive examiner, examined Plaintiff on July 24, 2008. (Tr. 453-57). Plaintiff reported he had been shot at least eight times in his wrists and legs, the last occurring in 1999. (Tr. 454). She noted his criminal history and prior drug use. (Tr. 453-54). He reported a staph infection and open sores on his legs which caused burning sensations and swelling. (Tr. 454). Plaintiff said he had not used cocaine for a long time, but Dr. Bancroft noted he tested positive for cocaine in March 2008. (Tr. 455). Plaintiff said he was able to sweep, mop, do the dishes and laundry, take out the garbage, and use money orders to pay his bills. (Tr. 456). He also said he was a good cook, could cook a variety of food, and occasionally went out to eat with his step-mother. (Tr. 456).

Plaintiff sought treatment at Warren West Clinic in March 2009 for sores on his legs and blood in his bowel movements. (Tr. 497-98). He was diagnosed with celluloids and prescribed antibiotics. (Tr. 497-98). Plaintiff followed up in June 2009 with continued rectal bleeding and was diagnosed with constipation. (Tr. 493-94).

In March 2010, Plaintiff went to Euclid Hospital after dropping a door on his foot. (Tr. 542, 544). He complained of pain in his fourth and fifth toes on his left foot, but was able to bear weight on it. (Tr. 544). An x-ray of his foot was normal. (Tr. 545). He was functional in activities of daily living, and his gait was within normal limits. (Tr. 546). He was diagnosed with paronychia and cellulitis and asked to follow-up in two to three days. (Tr. 550). A culture was positive for a staph infection. (Tr. 551-52). Plaintiff returned to Euclid Hospital April 12, 2010 and complained he was

6

not getting better because he did not have insurance for medication. (Tr. 523-25, 527). Plaintiff acknowledged he had smoked marijuana three days prior. (Tr. 527). He was diagnosed with cellulitis, given medication and asked to follow-up in 48 hours. (Tr. 531).

On November 10, 2010, Plaintiff went to Huron Hospital complaining of leg pain, swelling, and discoloration. (Tr. 477-78). He had normal sensation, normal motor function, and normal reflexes. (Tr. 479). His gait was within normal limits, he appeared well, and he was independent in his activities of daily living. (Tr. 481). He was diagnosed with leg cramps, given Motrin, and told to follow-up in 48 hours. (Tr. 483).

Plaintiff returned to Huron Hospital on February 3, 2011, complaining of pain in his left leg. (Tr. 485). He underwent an arterial flow study of his lower left extremities which showed modest left right iliac and left femoral popliteal disease. (Tr. 490). On examination, Plaintiff had normal reflexes, his gait was normal, and sensation was intact. (Tr. 486). Varicosities were visible on his left calf and tenderness was present with deep palpation. (Tr. 486). Plaintiff was given aspirin and anti-embolism socks for his left leg. (Tr. 488).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

8

establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

The ALJ concluded Plaintiff could perform light work with limitations, including a sit-stand option every hour for five minutes. (Tr. 20). Plaintiff argues the ALJ erred because substantial evidence does not support his RFC finding. (Doc. 15, at 1, 5).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1.

The ALJ addressed Plaintiff's claims of greater limitations, but found Plaintiff lacked credibility. (Tr. 20-22). Specifically, the ALJ discussed Plaintiff's left leg pain related to cellulitis, abscesses, staph infections, and varicosities. (Tr. 21). However, the ALJ correctly noted Plaintiff's functional limitations related to these impairments were not as extreme as Plaintiff claimed. (Tr. 22). For example, objective tests such as x-rays of his left foot, hands, left hip, a chest CT scan, and an echocardiogram, were normal. (Tr. 331-37, 363, 368, 545). Plaintiff's gait and reflexes were

frequently normal, his sensation and muscular strength were intact, his range of motion was normal (Tr. 22, 312, 314, 382, 479), and he did not require the use of a cane, walker, or crutches. (Tr. 261, 317). As the ALJ pointed out, Plaintiff was evaluated by physical and occupational therapy departments, but they determined he was not a candidate for either because he was independent in mobility and activities of daily living, had good standing balance, good activity tolerance, was independent with dressing, and was within normal limits in regards to range of motion and strength. (Tr. 22, 312-17).

While Plaintiff was diagnosed with varicose veins and popliteal disease, his muscle strength was intact, his gait was normal, his reflexes were normal and symmetric, and his sensation grossly intact. (Tr. 22, 485-86, 490). *See Young v. Sec'y of Health & Human Servs.,* 925 F. 2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Further, Plaintiff was able to care for himself and was given anti-embolism stockings as treatment. (Tr. 488).

In addition, his staph infections in November 2007 and March 2010 healed with treatment. (Tr. 378, 477-81, 483). After treatment for his staph infection in 2010, treatment notes showed he had normal sensation, motor function, reflexes, gait, and range of motion, and he was independent in activities of daily living. (Tr. 477-81). While he later complained of leg pain, he was diagnosed with cramps and prescribed Motrin. (Tr. 483). Similarly, after Plaintiff's first staph infection, he was rejected as a candidate for physical or occupational therapy because of a lack of functional limitations. (Tr. 22, 312-17).

Dr. Bancroft's assessment also supports the ALJ's credibility analysis, and in turn his RFC. She noted Plaintiff's statements "differ[] from the medical records, so this information should be viewed cautiously." (Tr. 22). Indeed, Plaintiff claimed he had not used cocaine "for a long time" but the medical records showed he tested positive for cocaine just four months prior. (Tr. 22). Similarly,

while Plaintiff testified he had not used drugs since 2008 (Tr. 38), his medical records revealed he used marijuana as late as April 2010. (Tr. 527).

Further, the ALJ reasonably relied on VE testimony to show Plaintiff could perform other work because the VE testified in response to an accurate, well-supported hypothetical question. (Tr. 56-57). The VE considered job possibilities for an individual with Plaintiff's vocational profile and the RFC formulated by the ALJ. (Tr. 56-57). In response, the VE identified a significant number of jobs that would accommodate Plaintiff's RFC and vocational profile. As discussed above, the ALJ's RFC was supported by substantial evidence and the ALJ reasonably credited only those restrictions supported by the record as a whole, while rejecting testimony based on unsupported restrictions.

Because substantial evidence supports the ALJ's RFC, Plaintiff's claims of greater limitations lack credibility, and the ALJ properly found Plaintiff could perform work based on VE testimony, the ALJ did not err.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

      s/James R. Knepp, II
United States Magistrate Judge